**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
    seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
    todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKEEM PINA and RICHARD ROBERTS, on behalf of themselves, the general public, and those similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>AVOCADO MATTRESS L.L.C.,<br><br>        Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; NEGLIGENT MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; UNJUST ENRICHMENT; AND BREACH OF CONTRACT<br><br>JURY TRIAL DEMANDED |

## **INTRODUCTION**

1.  Plaintiffs Richard Roberts and Akeem Pina, by and through their counsel, bring this Class Action Complaint against Avocado Mattress L.L.C. (hereinafter referred to as "Defendant" or "Avocado"), on behalf of themselves, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices; unjust enrichment; and breach of contract. The following allegations are based

1    on information and belief, including the investigation of Plaintiffs' counsel, unless stated

2    otherwise.

3        2.       Avocado sells latex mattresses, pillows, and mattress toppers (hereinafter,

4    the "Products") on its website, avocadogreenmattress.com (hereinafter, the "Website").

5    To distinguish itself from competitors and to increase its sales, Avocado advertises its

6    Products—falsely—as being free of synthetic and nontoxic chemicals.

7        3.       For example, Avocado represents itself as a company formed to create "a

8    green mattress—made from non-toxic, natural, and organic materials."[1] It advertises the

9    Products as "naturally nontoxic [with] 100% certified organic materials,"[2] and containing

10   "organic, 100% natural latex rubber."[3] Avocado further states that its mattresses are made

11   "with only the finest certified organic, natural, and non-toxic materials."[4]

12       4.       Avocado makes the same kinds of claims for each of its Products. For

13   example, Avocado advertises its Eco Organic Mattress as crafted with "natural, organic

14   materials, which make it biodegradable," including "certified organic latex[.]"[5] Avocado

15   further represents that its Avocado Green Mattress is made with "eco-conscious" latex

16   that is "safe & healthy" compared with competing products.[6] The same is true of its

17   Molded Latex Pillow, which Avocado states consists of "Natural Latex (100%)" with

18   "NO latex blends[.]"[7] Consumers who view the Avocado website and any Avocado

19   Product see these and similar representations presented throughout the Website.

20

21   _____

22   [1] https://www.avocadogreenmattress.com/pages/our-story (last accessed 4/25/23).
     [2] https://www.avocadogreenmattress.com (last accessed 4/21/23).

23   [3] https://www.avocadogreenmattress.com/pages/our-story (last accessed 4/25/23)
     [4] *Id*.

24   [5] https://www.avocadogreenmattress.com/collections/mattresses/products/best-organic-

25   affordable-mattress-eco-organic (last accessed 4/25/23).
     [6] https://www.avocadogreenmattress.com/collections/toppers/products/mattress-topper

26   (last accessed 4/25/23).
     [7] https://www.avocadogreenmattress.com/collections/pillows/products/molded-organic-

27   latex-pillow (last accessed 4/25/23).

28

5.      Avocado's advertising is false. Contrary to its longstanding, pervasive marketing, Avocado's mattresses contain synthetic, toxic chemicals. At virtually every stage of the latex manufacturing process—from harvesting and stabilization to vulcanization and drying—Avocado uses synthetic chemicals to create its Products. These chemicals—some of which are known toxins—end up in the Products. As discussed in more detail below, laboratory testing of Avocado's Green Mattress confirmed that the mattress contains a litany of synthetic chemicals, including Wingstay-L, Pentyl Furan, ZDEC, MBT/MBTS, DPG, and naphthenic hydrocarbon oils.

6.      Avocado repeatedly touts that its Products are "MADE SAFE Certified"—a designation that the products have supposedly "been developed with 100 percent healthy ingredients."[8] Avocado further represents that the MADE SAFE designation "prohibits all use of harmful substances."[9] Avocado attributes these statements to each of the Products (e.g. in describing the Avocado Green Mattress as a "MADE SAFE Certified, non-toxic product"[10]). Avocado also makes repeated use of the MADE SAFE logo and features one or more descriptions of the MADE SAFE certification on each latex mattress and mattress topper product page.

7.      Avocado advertises that the MADE SAFE certification means that the Products are made "with 100 percent healthy ingredients," but that is false.[11] None of the materials created by Nontoxic Certified, the organization that oversees the certification, state that the MADE SAFE certification can substantiate a claim that a product has "100

---

[8] https://www.avocadogreenmattress.com/pages/made-safe-non-toxic/ (last accessed 4/21/23).

[9] https://www.avocadogreenmattress.com/pages/gols-organic-latex-mattress (last accessed 4/21/23).

[10] https://www.avocadogreenmattress.com/collections/mattresses/products/green-natural-organic-mattress (last accessed 4/25/23)

[11] *See* https://www.madesafe.org/hazard-list-3/ (stating MADE SAFE® certification pertains only to products excluding certain "ingredients and classes of ingredients")

percent healthy ingredients."[12] Rather, the certification process merely involves cross-referencing a product's ingredients against a database of known and suspected toxins.

8.      It is unclear how Avocado obtained its MADE SAFE certification, given the toxic materials in the Products. For example, furans are toxic and appear on MADE SAFE's hazard list, as the organization stated recently on its official Facebook page:[13]


**MADE SAFE**
March 7, 2020 · 🌐

Both dioxins and furans are persistent (that means they don't break down readily in the environment) and bioaccumulate (meaning they build up in our bodies). In addition, dioxin and furan exposures have been linked to cancer, reproductive harm, and hormone disruption. Find out more here: https://www.madesafe.org/.../hazard-list/dioxins-and-furans/

**Dioxins and Furans**

**Where**
- Pads
- Tampons

**Linked To**
- Cancer
- Reproductive harm
- Hormone disruption

**Safer Options**

⟫ Look for chlorine-free or unbleached pads and tampons

⟫ Always buy from companies that list all ingredients on the label

⟫ Look for the MADE SAFE seal on feminine care products

MADE WITH SAFE INGREDIENTS
**MADE SAFE**
WWW.MADESAFE.ORG

---

[12] *See generally* https://www.madesafe.org/
[13] https://www.facebook.com/madesafe/posts/both-dioxins-and-furans-are-persistent-that-means-they-dont-break-down-readily-i/2470094683242612/

CLASS ACTION COMPLAINT

9.      Avocado repeatedly advertises that it controls the entire production chain of its products, from the growing of rubber trees, to the harvesting of the natural rubber, to the manufacturing of the final products.[14] Accordingly, Avocado cannot claim ignorance. Avocado has known all along that its Products are not "natural," "organic," "non-toxic," "certified organic," or made with "100 percent healthy ingredients." Avocado intended to mislead consumers with its false advertising, and it has done so for years.

10.     Avocado's false, misleading, and deceptive misrepresentations were directed at inducing, and did induce, Plaintiffs and Class Members to purchase the Products, and to purchase them at higher prices than they otherwise would have paid, had they known the truth.

## PARTIES

11.     Plaintiff Richard Roberts is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Palo Alto, California. Mr. Roberts intends to remain in California and makes his permanent home there.

12.     Plaintiff Akeem Pina is an individual and resident of Oakland, California. When he purchased Defendant's mattress, he resided in Los Angeles, California. Mr. Pina intends to remain in California and makes his permanent home there.

13.     Defendant Avocado Mattress, L.L.C. is a limited liability company organized under the laws of the state of New Jersey, having its principal place of business in Hoboken, New Jersey. Avocado is also registered to do business in California and has a large facility in California where its Products are manufactured. Avocado is engaged in the manufacture, packaging, promoting, marketing, advertising, distribution, labeling, and sale of the Products in California either directly or through its agents. Avocado has sold or caused the sale of numerous Products within the state of California.

---

[14] *See* https://www.avocadogreenmattress.com/pages/gols-organic-latex-mattress

1

## JURISDICTION AND VENUE

2

14.     This Court has jurisdiction over the subject matter of this action pursuant

3

to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000,

4

exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different

5

states.

6

15.     The injuries, damages, and/or harm upon which this action is based

7

occurred or arose out of activities engaged in by Defendant within, affecting, and

8

emanating from, the State of California. Defendant regularly conducts and/or solicits

9

business in, engages in other persistent courses of conduct in, and/or derives substantial

10

revenue from products provided to persons in the State of California. Defendant has

11

engaged, and continues to engage, in substantial and continuous business practices in the

12

State of California.

13

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because

14

a substantial part of the events or omissions giving rise to the claims occurred in the state

15

of California, including within this District.

16

17.     In accordance with California Civil Code Section 1780(d), Mr. Roberts

17

concurrently files herewith a declaration establishing that he purchased (i) an Avocado

18

Green Mattress with latex topper on or about May 25, 2019; (ii) an Avocado Green Pillow

19

on or about May 25, 2019; and (iii) an Avocado Molded Latex Pillow on or about August

20

30, 2021. He made each purchase using the Website. *See* Exhibit B.

21

18.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this

22

Court.

23

## SUBSTANTIVE ALLEGATIONS

24

19.     As noted above, the Products that are the subject of this Complaint are

25

Avocado latex products advertised as "natural," "eco," "organic," and/or "green,"

26

including, without limitation:

27

28

CLASS ACTION COMPLAINT

a. Avocado's mattresses (marketed as the Avocado Green Mattress, Eco Organic Mattress, Luxury Organic Mattress, Eco Organic Kids Mattress, Eco Organic Crib Mattress, Organic Crib Mattress, Luxury Organic Crib Mattress, Avocado Vegan Mattress, and Avocado Latex Mattress);

b. Avocado's pillows (marketed as the Avocado Green Pillow, Avocado Molded Latex Pillow, Luxury Organic Plush Pillow, Organic Latex Wedge Pillow Set, Organic Toddler Pillow, Organic Mini Pillow, and Mini Molded Latex Pillow); and

c. Avocado's mattress toppers (marketed as the Eco Organic Mattress Topper, Organic Latex Mattress Topper, Luxury Organic Mattress Topper, and Vegan Mattress Topper).

**A.  Avocado's Deceptive Advertising**

20.     At all relevant times, Defendant, which sells its Products principally through its website, https://www.avocadogreenmattress.com (the "Website"), marketed and advertised its latex Products as "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and/or "green," without disclosing that the Products contain non-natural, non-organic, toxic, environmentally unfriendly chemicals.

21.     For example, on the Website Defendant advertises its Avocado Green Mattress as "natural" and "organic" with "eco-conscious" latex that is "safe & healthy"[15]; its Avocado Green Pillow as "natural," "organic," "chemical-free," and "non-toxic"[16]; and its Avocado Molded Latex Pillow as "100% natural latex" that is "natural and organic" and "non-toxic."[17]

---

[15] https://www.avocadogreenmattress.com/collections/mattresses/products/green-natural-organic-mattress (accessed 4/25/23)

[16] https://www.avocadogreenmattress.com/collections/pillows/products/green-pillow (accessed 4/25/23)

[17] https://www.avocadogreenmattress.com/products/green-pillow (accessed 4/25/23)

22.     Avocado affirmatively represents its Products using descriptions and imagery that a reasonable consumer would associate with nature, the environment, health, and well-being. Consumers who see Avocado's website and other marketing materials are continually assured that the Products do not contain synthetic and potentially harmful chemicals. For example, visitors to the index page of the Website are immediately confronted with two uses of the word "organic," which is in turn followed by a statement that Avocado's "organic mattresses" contain "only the finest naturally nontoxic and 100% certified organic materials":



CLASS ACTION COMPLAINT

# ONE OF THE WORLD'S MOST SUSTAINABLE BRANDS

Avocado organic mattresses are handcrafted in California with only the finest naturally nontoxic and **100% certified** organic materials, sourced from the best domestic and international sources, including **our own farms** in India and Guatemala. Our mission is to be the most respected source for organic mattresses, pillows and bedding at affordable prices — while maintaining environmentally conscious, ethical, and **sustainable business practices** — to help safeguard the health of people and the planet. We are a **"Best for the World" Certified B Corporation, Climate Neutral** and **Fair Trade®** certified, and the **Pinnacle Award Winner** from 1% for the Planet®. Fast Company® lists Avocado as a "Brand that Matters." We are even on our way to becoming the world's first **zero-waste certified** mattress factory.

23.     Throughout the Website, Avocado repeatedly uses the terms "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and/or "green" in describing its Products. The following screenshots are only examples:

## 100% CERTIFIED ORGANIC MATTRESS

The Avocado Green Mattress is GREENGUARD Gold Certified — and made with natural and organic materials, including GOLS **certified organic latex** (CU 863637) from **our co-owned farmers' collectives** and co-owned processing facilities in India and Guatemala, operating under the USDA National Organic Program; GOTS certified organic (CU 863637) certified wool **from a farmers' society we also co-own**; and GOTS **certified organic cotton** (CU 863637). Our non-toxic green bed combines the finest natural cushioning with an internal, zoned, pressure-point support system for proper back support and extended durability. We even make a new Vegan Mattress without wool that is also PETA-approved.

## AVOCADO GREEN MATTRESS

★★★★⯪   18403 Reviews



**America's #1 best rated certified organic mattress** features 100% GOLS certified organic latex, 100% GOTS certified organic wool, 100% GOTS certified organic cotton, and up to **1,438** pocketed support coils arranged in **5 zones**. No polyurethane foams or toxic fire retardants. **Needle-tufted by hand**, not glued. For split kings, order two Twin XLs. **Made in Los Angeles** with the best domestic and imported materials — even from our own farms!

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# THE FOAM MATTRESS PERFECTED: 100% ORGANIC, PERFECT BOUNCE®, LOW PROFILE, FIRM FEEL, BIODEGRADABLE!

We don't hold back on the GOLS organic certified natural latex in our Latex Mattress. We use a full **9 inches** of foam, all of which comes from our **own organic farms**, to provide firm, contouring support. With our GOTS organic certified wool and cotton rounding out the support layers, the mattress is made exclusively with natural, organic, materials — so it's **entirely biodegradable**. A **slimmer profile** gives it a sleek, modern look. And rest easy knowing your mattress is also GREENGUARD Gold and **100% GOTS organic certified** for the highest marks in environmental and social responsibility.

24.     Avocado also tries to distinguish its Products from competing products, such as those that use "synthetic" or "petroleum-based" ingredients:



### 100% GOLS CERTIFIED ORGANIC LATEX

Avocado Mattress Toppers feature GOLS organic certified latex (CU863637) rubber foam, made sustainably from our own rubber tree farm. It's an eco-conscious, high-performance material, offering resilience, durability, and temperature control that far exceeds synthetic, blended, or petroleum-based polyurethane foams.

CLASS ACTION COMPLAINT

25. In comparing its Products to those that use "petroleum-based" ingredients, Avocado neglects to mention that its own products contain significant amounts of hydrocarbon oil—a petroleum-based ingredient.

26. Avocado's advertising content is also designed to mislead consumers into believing that the entire process of making its Products is natural and chemical-free. The following image from its website is highly suggestive that Avocado's latex is fresh from a rubber tree, without undergoing any processes that would require the introduction of synthetic chemicals:



27. Avocado even purports to provide on the Website a complete description of the step-by-step manufacturing process,[18] complete with photographs in which raw latex is mixed into a foam and poured into molds:

---

[18] *See* https://www.avocadogreenmattress.com/pages/gols-organic-latex-mattress



**MIXED AND POURED INTO MOLDS**

To make our Dunlop latex, the raw latex formulation is mixed into a frothy foam in centrifuges, where impurities are removed and protein allergens are greatly diminished. It's then pumped into large 6-inch deep aluminum molds (very similar to an oversized waffle iron). Latex foam is a poor conductor of heat (which is great for a mattress), so 'pins' are present in the mold to help heat and cool the foam. The pins make the holes that are characteristic of latex foam cores.

28.     At no time does Avocado disclose to consumers that it uses chemicals—let alone toxic chemicals—during the manufacturing process, and that those chemicals end up in the final Products that consumers purchase and use.

29.     Avocado's advertising has been substantially the same since Avocado began selling the Products, although its past representations make even more expansive claims with respect to the purported "natural" qualities of its Products.

(a) Avocado's Website, as it appeared on May 18, 2019, stated the company does "not use petroleum-based polyurethane foams, memory foams, chemical flame retardants, or adhesives between the comfort layers. ***Instead, an Avocado Green Mattress is so honest and natural that we proudly disclose everything that goes into our mattresses right on our product pages.***" (emphasis added)

CLASS ACTION COMPLAINT



NATURALLY NON-TOXIC

An Avocado Green Mattress is made with only the finest natural and organic materials, including **100% GOLS organic certified latex** from tree-tapped sources, **100% GOTS organic certified wool** and **100% GOTS organic certified cotton**. We do not use petroleum-based polyurethane foams, memory foams, chemical flame retardants, or adhesives between the comfort layers. Instead, an Avocado Green Mattress is so honest and natural that we proudly disclose everything that goes into our mattresses right on our product pages.

SEE WHAT'S INSIDE

(b) Avocado's Website, as it appeared on August 27, 2018, also stated the company crafted its "ultra-premium, green latex mattresses from natural and organic materials **without toxic industrial chemicals and without petroleum-based polyurethane foams**." (emphasis added)

When you compare an Avocado Green Mattress against other memory foam, gel, synthetic foam or traditional coil-spring mattresses, the differences are clear. We craft our ultra-premium, green latex mattresses from natural and organic materials without toxic industrial chemicals and without petroleum-based polyurethane foams. The result? An all natural latex mattress that provides a healthy, luxurious night's sleep and greener environment.

(c) Expounding on the purported purity of its Products, that same version of the Website further represented its Products are made from "PURE, all natural latex [that] provides for an environmentally-friendly and affordable non-toxic mattress. The harvesting of the sap is sustainable; and the rubber trees help to purify the air and water, and promote biodiversity. Latex, despite being so highly durable and resilient, is biodegradable."

**ENVIRONMENTALLY FRIENDLY:** PURE, all natural latex provides for an environmentally-friendly and _affordable non-toxic mattress_. The harvesting of the sap is sustainable; and the rubber trees help to purify the air and water, and promote biodiversity. Latex, despite being so highly durable and resilient, is biodegradable.

1    (d) Avocado represented itself on its Website as "RADICALLY

2    HONEST" in describing the specifications of its Products. For example,

3    the product-specific page for the Avocado Green Mattress listed no

4    chemicals except for "Natural Hydrated Silica," which Avocado described

5    as being a safe "natural fire barrier." The Green Mattress page on the

6    Avocado Website also stated until at least September 6, 2020: "Since

7    Avocado mattresses are made with natural and organic materials, they're

8    also eco-conscious (plus, they're handmade in California). ***They're largely***

9    ***recyclable and biodegradable—although that's something you won't***

10    ***have to think about for a while, since each one comes with a 25-year***

11    ***warranty.***" (emphasis added). Although the quote is attributed to the

12    publication "Well+Good," the article was written by Avocado, which paid

13    Well+Good to run it.[19]

14

15    **Legal Label**

16    A **law label** is a legally required tag or label on new mattresses that describes the interior filling materials. Few companies

17    will share this information prior to your purchase because it separates fact from marketing hype. We believe

      differently. Here's what the legal tag on the **standard Avocado Green Mattress** actually says: Made in California with

18    internal materials (based on weight) consisting of Natural Latex (73%), Natural Wool Fiber (21%), and Certified Organic

      Cotton (6%). On our **pillow-top mattress**, it consists of Natural Latex (87%), Natural Wool Fiber (7%), and Certified

19    Organic Cotton (6%). **Note: NO polyurethane foams, NO memory foams, NO synthetic foams, NO latex blends, NO**

      **chemical adhesives between the comfort layers, and NO chemical flame retardants are used!**

20    Read Our Law Labels

21    **Natural Hydrated Silica**

22    Hydrated silica has a long history of safe use, even as an ingredient in food products. It's listed by the US Food & Drug

      Administration to be **Generally Recognized As Safe (GRAS)** and has no known toxicity or carcinogenicity. (**Tom's of**

23    **Maine®** even uses it in their toothpaste.) Hydrated Silica acts as an effective and natural fire barrier on both sides of our

      mattresses that complements the flame retardancy of our wool.

24    View Our Open Flame Test Results

25

26    _____

27    [19] *See* https://www.wellandgood.com/avocado-mattress-sleep-organic-mattress/ (last
      accessed 4/27/23)

28

"What's good for you is also good for the planet. Since Avocado mattresses are made with natural and organic materials, they're also eco-conscious (plus, they're handmade in California). They're largely recyclable and biodegradable—although that's something you won't have to think about for a while, since each one comes with a 25-year warranty."

Good Advice
Well+Good

(e) The Avocado Website still states, in various places, that its mattresses are "biodegradable." For example, the website states, "Avocado Green Mattress is an eco-friendly brand that creates uber-comfy mattresses with organic, biodegradable materials — including 100% organic latex, wool, and cotton — as opposed to synthetic materials and potentially harmful chemicals."[20]

30.     In the below image from the June 2020 version of Avocado's Website, Defendant claimed that its latex Products are "Pure & Natural," and that the end product is "clean and green":

---

[20] *See* https://www.avocadogreenmattress.com/pages/organic-is-best (last accessed 4/27/23)

1
2
3
4
5
6
7
8
9

PURE & NATURAL: At Avocado, our green mattresses are
made with 100% GOLS organic certified latex to produce
the most green, healthy and luxuriously supportive foam
imaginable. Here's how we do it: We begin by harvesting
pure rubber sap from Hevea Brasiliensis trees in India. No
trees are harmed in the process. (They yield latex for up to
30 years.) We then follow the traditional Dunlop
manufacturing process that's been in use since 1929: we
whip the latex sap into a froth, pour it into molds, cover it,
and steam bake it. The end result is a clean and green
material that's amazingly resilient, supportive and durable.

10
11
12
13
14

31.     Similarly, in the below screenshot from the August 2018 version of
its Website, Avocado claimed that its "green mattresses are made with 100% natural
latex to produce the most green, healthy and luxuriously supportive foam
imaginable":

15
16
17
18
19
20
21



**100% NATURAL DUNLOP LATEX RUBBER**

NATURAL & ORGANIC: At Avocado, our green mattresses are made with 100% natural latex to produce the most green, healthy and luxuriously supportive foam imaginable. Here's how we do it: We begin by harvesting pure rubber sap from Hevea Brasiliensis trees in Asia. No trees are harmed in the process. (They yield latex for up to 30 years.) We then follow the traditional Dunlop manufacturing process that's been in use since 1929: we whip the latex sap into a froth, pour it into molds, cover it, and steam bake it. The end result is a clean and green material that's amazingly resilient, supportive and durable.

22
23
24
25
26
27
28

**B. Avocado's Latex Products Contain Synthetic, Toxic Chemicals**

32.     On behalf of Plaintiff Roberts, Plaintiffs' counsel retained an expert in
polymer engineering—a university engineering professor with decades of experience in
rubber formulation. The expert commissioned a well-known accredited laboratory with

rubber formulation expertise to deformulate a sample of Mr. Robert's Avocado Green Mattress using the most advanced testing methods available. (*See* Exhibit A, Lab Report.)

33.     The test results confirm that the mattress contains a number of synthetic, toxic chemicals, including Wingstay-L, Pentyl Furan, ZDEC, MBT/MBTS, DPG, naphthenic hydrocarbon oils, and other ingredients. (*See* Exhibit A.) Each of these substances is or may be associated with significant negative human health consequences and environmental impacts.

(a) **Wingstay-L** contains chemicals known to the State of California to cause cancer, birth defects, and other reproductive harm. It contains substances listed with the State of California as hazardous waste, and it is "not readily biodegradable."[21]

(b) **Pentyl Furan**, also known as amylfuran, is acutely toxic and causes eye, skin, and respiratory irritation. It is also flammable.[22]

(c) **Zinc diethyldithiocarbamate, or "ZDEC,"** a possible accelerator used in the rubber manufacturing process, is irritating to the eyes, respiratory system, and skin.[23] Furthermore, it is toxic to aquatic organisms, and it may cause long-term adverse effects in the aquatic environment.[24] Additionally, ZDEC may form carcinogenic substances during the vulcanization process.[25]

(d) **2, 2'-dibenzothiazyl disulfide, or "MBTS,"** a possible accelerator used in the rubber manufacturing process, may cause skin sensitization following repeated contact and its dust may cause respiratory irritation, including the symptoms of

---

[21] *See* https://harwick.com/files/sds/0090402.pdf
[22] *Id.*
[23] *See* https://media.supplychain.nhs.uk/media/documents/FNR480/COSHH/35821_FNR480_2.pdf
[24] *Id.*
[25] *Id.*

CLASS ACTION COMPLAINT

1
2
3

bronchitis.[26] Like ZDEC, it is toxic to aquatic organisms, and it may cause long-term adverse effects in the aquatic environment.[27] It is "not readily biodegradable."[28]

4
5
6
7
8

(e) **1,3-diphenylguanidine, or "DPG,"** a possible accelerator used in the rubber manufacturing process, is associated with damaging human fertility and unborn children.[29] It is a health hazard and can cause irritation to eyes, skin, and the respiratory system.[30] It is also toxic to aquatic life, with long-lasting effects.[31]

9
10
11

(f) **Hydrocarbon oil**, or rubber processing oil made from petroluem, is a naphthenic-type oil associated with eye, skin, and respiratory irritation. It is also flammable.[32]

12
13
14
15
16

34.    It is commercially infeasible for Defendant—or anyone else—to make a latex mattress or any related latex Product using only rubber from the rubber tree. Instead, the rubber must be "vulcanized." In the vulcanization process, natural rubber is cross-linked with a chemical such as sulfur, using various other chemicals and heat. This gives the rubber stability.

17
18
19
20

35.    The vulcanization process occurs in three main stages. First, the natural rubber is combined with the chemicals. Second, the resulting compound is whipped into a foamy mixture. Finally, the compound is poured into a heated mold. The heated mold causes the rubber to be cured, resulting in a finished product.

21

_____

22
23

[26] *See* http://www.ylsch-rbb.com/wp-content/uploads/2020/02/1-MSDS-MBTSDM-POWDER.pdf

24

[27] *Id*.
[28] *Id*.

25

[29] *See* https://www.hbchemical.com/wp-content/uploads/2022/09/DPG-SDS-1.pdf
[30] *Id*.

26

[31] *Id*.

27

[32] *See* https://www.velvex.in/download/Rubber-process-oils/SDS/Napththanic-process-oil.pdf

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36.     One necessary chemical to this process is the "accelerator," which shortens the manufacturing time and reduces the amount of sulfur that must be used. The most common accelerators include ZDEC and MBTS, as found in Plaintiff Robert's mattress. These chemicals do not disappear during the manufacturing process—they make their way into the final product, including any Product using latex.[33]

37.     Few of the chemicals used in the manufacture of a latex product are natural. Dithiocarbamates, of which ZDEC is a part, are actually a group of fungicides, and can affect thyroid function.[34] Benzothiazoles, which includes MBTS, are "respiratory tract irritants, endocrine disruptors, carcinogens, and genotoxicants" that can further degrade to highly toxic substances potentially associated with "excess risks of cancers, including bladder cancer, lung cancer, and leukemia."[35]

38.     In an attempt to make consumers believe it is disclosing everything about the Products' ingredients, Avocado admits that it uses zinc oxide.[36] But, as the lab report confirms, zinc oxide is far from the only ingredient used. Indeed, it would be impossible to make a mattress using only natural rubber and zinc oxide, because zinc oxide can only be used as an "activator." To make a finished latex product, chemical accelerators and antioxidants must be used, to ensure the latex can properly cure without degrading. Avocado's accelerator and antioxidant chemicals are not "organic," "certified organic," "natural," "healthy," and/or "pure & natural."

_____

[33] *See* https://www.weserland.eu/en/news-events/337-environmentally-friendly-accelerator-combinations-vulcanisation.html
[34] *See* https://www.sciencedirect.com/topics/pharmacology-toxicology-and-pharmaceutical-science/dithiocarbamate
[35] *See* https://pubs.acs.org/doi/10.1021/acs.est.7b05493
[36] *See*, e.g., https://help.avocadogreenmattress.com/en/articles/4649966-how-is-your-gols-organic-certified-dunlop-latex-made-what-s-in-it-has-it-been-tested

1    39.    Accordingly, Avocado's Products are not, and cannot reasonably be

2    described as, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco,"

3    "green," "pure," and/or "pure & natural."

4    40.    Similarly, to the extent Defendant's Products are described as

5    "biodegradable," as the Avocado Eco Organic Mattress, Avocado Eco Organic Crib

6    Mattress, Avocado Eco Organic Kids Mattress, and Avocado Latex Mattress, without

7    limitation, are presently described on Avocado's website as of the date of this Complaint,

8    they are not, and cannot be reasonably described as "biodegradable." Among other

9    ingredients in the Products, neither Wingstay-L, zinc oxide, MBTS, nor hydrocarbon oil

10   are biodegradable.

11   **C. Avocado Misleads Consumers Regarding its MADE SAFE Certification.**

12   41.    To increase its revenues, Avocado continuously appeals to authority,

13   suggesting its claims are backed by scientific authority, evidence, and/or third party

14   research. Most significantly, Avocado represents that its Products are "MADE SAFE

15   Certified." According to Avocado, the Certification "only allows the use of ingredients

16   that are not known or suspected to harm human health, animals, aquatic life, or

17   ecosystems."

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT



42.     Avocado also states that "Made Safe Certified" means that its Products have passed a certification process that "prohibits all use of harmful substances."[37] Avocado further claims that the certification means the Products "have been developed with 100 percent healthy ingredients."[38]

43.     These representations are false. Avocado failed to inform consumers that its Products are not eligible for MADE SAFE certification, given the toxic materials contained in them. For example, furans are toxic and appear on MADE SAFE's hazard list, as the organization stated recently on its official Facebook page:[39]

---

[37] *Id.*
[38] *See* https://www.avocadogreenmattress.com/pages/made-safe-non-toxic/
[39] https://www.facebook.com/madesafe/posts/both-dioxins-and-furans-are-persistent-that-means-they-dont-break-down-readily-i/2470094683242612/

**MADE SAFE**
March 7, 2020 · 🌐

Both dioxins and furans are persistent (that means they don't break down readily in the environment) and bioaccumulate (meaning they build up in our bodies). In addition, dioxin and furan exposures have been linked to cancer, reproductive harm, and hormone disruption. Find out more here: https://www.madesafe.org/.../hazard-list/dioxins-and-furans/

# Dioxins and Furans

**Where**
- Pads
- Tampons

**Linked To**
- Cancer
- Reproductive harm
- Hormone disruption

## Safer Options

» Look for chlorine-free or unbleached pads and tampons

» Always buy from companies that list all ingredients on the label

» Look for the MADE SAFE seal on feminine care products

**MADE SAFE**

44.     Additionally, multiple chemicals in the Products, including ZDEC, MBTS, and DPG are known to be harmful to aquatic life.

45.     Had Avocado been forthright about its Products' actual ingredients—including its use of Pentyl Furan and Wingstay—it would not have received its MADE SAFE certification. Instead, Avocado concealed the ingredients in the Products from the Nontoxic Certified organization, thereby ensuring that it would obtain the MADE SAFE certification. Avocado then used the certification throughout its advertising, in a successful effort to mislead consumers.

1

**D.  Avocado Has Full Knowledge of the Falsity of its Advertising.**

2       46.     Avocado cannot claim ignorance of any of its misrepresentations. Because

3    it controls the entire production chain, it knows exactly what chemicals it adds at every

4    stage of that chain, and what chemicals end up in the final Products that consumer

5    purchase and use.

6       47.     Avocado knows that its Products contain potentially harmful, toxic, non-

7    natural, synthetic chemicals.

8       48.     Likewise, Avocado knows that an increasingly health-aware and

9    environmentally conscious public would find products marketed and advertised as

10   "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "pure,"

11   and/or "pure & natural" more desirable than competing products not marketed and

12   advertised as such. Further, Avocado knows consumers will pay a price premium for

13   products so marketed and advertised—especially because Avocado has benefitted from

14   charging that price premium for years.

15      49.     Because of Defendant's misrepresentations and deception, Plaintiffs and

16   Class Members purchased the Avocado Products over competing products and paid a

17   premium for those Products. Had Plaintiffs and Class Members known that the Products

18   were not "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green,"

19   "pure," and/or "pure & natural," they would not have purchased the Products, or they

20   would have paid significantly less for them.

21      50.     In purchasing the Products, Plaintiffs and Class Members did not receive

22   the full value that they were led to believe they would receive.

23                              **PLAINTIFFS' EXPERIENCE**

24      **A.  Mr. Roberts**

25      51.     Plaintiff Richard Roberts purchased (i) an Avocado Green Mattress with

26   latex topper on or about May 25, 2019; (ii) an Avocado Green Pillow on or about May 25,

27

28

2019; and (iii) an Avocado Molded Latex Pillow on or about August 30, 2021. He made each purchase using the Avocado Website.

52.     Prior to making each purchase, Mr. Roberts reviewed Defendant's marketing materials on the Website, including Defendant's repeated representations that the Products are "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and "green." The materials Mr. Roberts reviewed were identical or substantially identical to those described and depicted above in the Substantive Allegations, sections A and C. As a person who values his health and the environment, these statements appealed to Mr. Roberts.

53.     Mr. Roberts paid for the Products under the reasonable but mistaken belief, based on Avocado's repeated representations, that the Products were in fact "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and "green." If he had known that any or all of these statements were false or misleading, he would not have purchased any of the Products, or would have paid less for them.

54.     Mr. Roberts continues to be interested in mattress, pillow, and mattress topper products that are, in fact, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and/or "green," and he would be interested in purchasing such products in the future.

55.     Because of the pervasive and ongoing nature of Avocado's intentional misrepresentations, omissions, and concealment, Mr. Roberts reasonably relied on these misrepresentations, and was unaware of the falsity of Avocado's advertising until 2022.

56.     However, Mr. Roberts did not learn the identity of any of the specific ingredients that were contained in the Products until receiving the results of the 2023 lab report commissioned by his expert.

57.      The fact that Mr. Roberts had to send a sample of his Avocado mattress to an expert in polymer engineering for accredited laboratory testing to discover the nature and extent of Avocado's intentional misrepresentations, omissions, and concealment

shows that Mr. Roberts was not at fault for failing to detect Avocado's misrepresentations and omissions. The reasonably prudent consumer cannot be expected to retain a polymer engineering expert to deduce the truth or falsehood of Avocado's many false claims.

58.     On behalf of Mr. Roberts, Plaintiffs' counsel sent a letter to Defendant on or about August 15, 2022, informing it of its violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA") in connection with its labeling, advertising, marketing, and sale of its latex Products.

59.     In response, Defendant declined to take any steps to cure the defect, warn the public, or ensure that future purchasers would not be similarly harmed.

**B.  Mr. Pina**

60.     Plaintiff Akeem Pina purchased an Avocado Green Mattress with Attached Pillow Top on or about October 9, 2018. He made the purchase using the Avocado Website.

61.     Prior to making his purchase, Mr. Pina reviewed Defendant's marketing materials on the website, including Defendant's repeated representations that the Products are "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and "green." The materials Mr. Pina reviewed were identical or substantially identical to those described and depicted above in the Substantive Allegations, sections A and C. As a person who values his health and the environment, these statements appealed to Mr. Pina.

62.     Mr. Pina paid for the Avocado Products under the reasonable but mistaken belief, based on Avocado's repeated representations, that the Products were in fact "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and "green." If he had known that any or all of these statements were false or misleading, he would not have purchased any of the Products, or would have paid less for them.

63.     Mr. Pina continues to be interested in mattress, pillow, and mattress topper products that are, in fact, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," and/or "green," and he would be interested in purchasing such products in the future.

64.     Because of the pervasive and ongoing nature of Avocado's intentional misrepresentations, omissions, and concealment, Mr. Pina reasonably relied on these misrepresentations, and was unaware of the falsity of Avocado's advertising until 2023.

65.     The fact that Mr. Pina's co-plaintiff had to send a sample of his Avocado mattress to an expert in polymer engineering for accredited laboratory testing to discover the nature and extent of Avocado's intentional misrepresentations, omissions, and concealment shows that Mr. Pina was not at fault for failing to detect Avocado's misrepresentations and omissions. The reasonably prudent consumer cannot be expected to retain a polymer engineering expert to deduce the truth or falsehood of Avocado's many false claims.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

**Class**: All persons who purchased the Products in the United States.

**California Subclass**: All Class Members who purchased the Products in California.

67.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

68.     Numerosity: Plaintiffs do not know the exact size of each of the Classes, but they estimate they are composed of more than 100 persons. The persons in the Classes

are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

69.     Common Questions Predominate: This action involves common questions of law and fact to the Classes because each class member's claim derives from the deceptive, misleading, and/or false statements and omissions that led them to believe that the Products were, variously and without limitation, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "pure," and/or "pure & natural." The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover. The questions of law and fact common to the Classes are:

a.     Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented that its Products were, variously and without limitation, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "biodegradable," "pure," and/or "pure & natural";

b.     Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented that its Products were worthy of the MADE SAFE certification;

c.     Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented to the Class the nature and requirements of the MADE SAFE certification;

d.     Whether Defendant's actions violate the laws invoked herein;

e.     Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

f.     Whether Defendant's representations or omissions are material to reasonable consumers;

g.      Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h.      The amount of profits and revenues earned by Defendant as a result of the conduct;

i.      Whether Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j.      Whether Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

70.      Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Furthermore, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

71.      Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all members of the Classes because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests in conflict with, or antagonistic to, the interests of Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Classes and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

72.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

73.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

74.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

75.     As set forth above, Defendant falsely and/or deceptively represented to Plaintiffs and those similarly situated that the latex Products were, variously and without limitation, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "biodegradable," "pure," and/or "pure & natural," when, in fact, the Products were not. Defendant knew that the Products were not the things Defendant represented them to be. Defendant further represented that "we proudly disclose everything that goes into our mattresses right on our product pages"—a false statement. Defendant additionally made false and/or deceptive representations and statements (by omission and commission)

that led reasonable consumers to believe that that the Products were good for their health and not harmful to the environment.

76.    As further set forth above, Defendant also falsely represented to Plaintiffs and those similarly situated that its Products were worthy of the MADE SAFE certification, which according to Defendant, meant that the Products were "developed with 100 percent healthy ingredients." Defendant also falsely represented to Plaintiffs and those similarly situated that the MADE SAFE designation "prohibits all use of harmful substances." Defendant failed to inform Plaintiffs and those similarly situated that the Products contained one or more hazardous chemicals that should have disqualified it from the MADE SAFE certification. Defendant further failed to inform Plaintiffs and those similarly situated that the MADE SAFE certification does not mean that the products were developed with 100 percent healthy ingredients, nor did it inform Plaintiffs and those similarly situated that the MADE SAFE designation does not prohibit all use of harmful substances.

77.    Defendant's misrepresentations were material at the time they were made. They concerned material facts that were essential to the purchasing decisions of Plaintiffs and those similarly situated. Products that are not good for consumers' health and the environment are worth less to consumers than those that are.

78.    Plaintiffs and those similarly situated reasonably relied to their detriment on Defendant's representations. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

79.    By and through such fraud, deceit, and/or misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

1        80.    As a direct and proximate result of Defendant's fraud and

2 misrepresentations, Plaintiffs and those similarly situated have suffered damages. In

3 particular, Plaintiffs seeks to recover, on behalf of himself and those similarly situated, the

4 amount of the price premium they paid (i.e., the difference between the price consumers

5 paid for the Products and the price they would have paid but for Defendant's

6 misrepresentations), in an amount to be proven at trial.

7        81.    Defendant's conduct as described herein was willful and malicious and

8 was designed to maximize Defendant's profits even though Defendant knew that it would

9 cause loss and harm to Plaintiffs and those similarly situated.

10        82.    Plaintiffs did not discover Defendant's illicit acts until their expert, who

11 was retained in late 2022, commissioned the testing of Defendant's latex in 2023.

12 Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time.

13 Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on

14 inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to

15 manufacture the Products, Plaintiffs could not have discovered these facts even in the

16 exercise of reasonable diligence. Uncovering Defendant's illicit behavior required

17 sophisticated and expensive laboratory testing by a trained professional, as well as

18 interpretation by an expert in rubber formulation.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiffs and the California Subclass**

       83.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class

Action Complaint as if set forth herein.

       84.    This cause of action is brought pursuant to the California Consumers Legal

Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

85.     Defendant's actions, representations, omissions, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

86.     Plaintiffs and other members of the class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

87.     The Products that Plaintiffs and similarly situated members of the class purchased are "goods" within the meaning of California Civil Code § 1761.

88.     By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, as described above, Defendant has violated, and continues to violate, §§ 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(4), Defendant used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), Defendant represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), Defendant advertised goods with intent not to sell them as advertised.

89.     Specifically, Defendant's acts and practices led consumers to believe that the latex Products were, variously and without limitation, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "biodegradable," "pure," and/or "pure & natural," when, in fact, the Products were not. Defendant further represented that "we proudly disclose everything that goes into our mattresses right on our product pages"—a false statement. Defendant additionally made false and/or deceptive representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were good for their health and not harmful to the environment.

90.     In addition, Defendant's acts and practices led consumers to believe that the Products were worthy of the MADE SAFE certification, when they were not. Defendant's acts and practices also led consumers to believe that the MADE SAFE certification meant that the Products were "developed with 100 percent healthy ingredients," when there was no such requirement. Defendant's acts and practices further led consumers to believe the MADE SAFE designation "prohibits all use of harmful substances," when it does not.

91.     Further, Defendant omitted material facts that it had a duty to disclose, as alleged above.

92.     Defendant's concealment of the true characteristics of the Products was material to Plaintiffs and class members. Had they known the truth, Plaintiffs and the class members would not have purchased the Products or would have paid significantly less for them.

93.     Defendant, as explained above, had an ongoing duty to Plaintiffs and the class members to refrain from unfair and deceptive practices under the CLRA in the course of their business. Specifically, Defendant owed Plaintiffs and class members a duty to disclose material facts concerning the Products because it possessed exclusive knowledge, it intentionally concealed them from Plaintiffs and class members, and/or it made partial representations that were misleading since it concealed the aforementioned facts.

94.     Plaintiffs and class members had no way of learning the facts that Defendant had concealed or failed to disclose because they were unaware of the manufacturing process for Defendant's Products. Furthermore, Defendant misrepresented, or at least omitted, a key part of that manufacturing process, which was the introduction of synthetic chemicals to the latex.

95.     Plaintiffs and class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

96.     Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the class will continue to suffer harm.

97.     On August 15, 2022, Plaintiffs provided Defendant with notice and demand on behalf of himself and all others similarly situated that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

98.     Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

99.     Plaintiffs did not discover Defendant's illicit acts until their expert, who was retained in late 2022, commissioned the testing of Defendant's latex in 2023. Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to manufacture its mattresses, Plaintiffs could not have discovered these facts even in the exercise of reasonable diligence. Uncovering Defendant's illicit behavior required

1  sophisticated and expensive laboratory testing by a trained professional, as well as

2  interpretation by an expert in rubber formulation.

3  **PLAINTIFFS' THIRD CAUSE OF ACTION**
   **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

4  **On Behalf of Plaintiffs and the California Subclass**

5      100.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class

6  Action Complaint as if set forth herein.

7      101.    Beginning at an exact date unknown to Plaintiffs, but since at least as early

8  as the time of the first Plaintiff's purchase and continuing until today, Defendant made

9  untrue, false, deceptive and/or misleading statements in connection with the advertising

10  and marketing of the Products, and in particular those advertised as, variously and without

11  limitation, "natural," "organic," "non-toxic," "certified organic," "healthy," "eco,"

12  "green," "biodegradable," "pure," and/or "pure & natural."

13      102.    As set forth in this Class Action Complaint, Avocado has made

14  representations and statements (by omission and commission) that led reasonable

15  consumers to believe that that the latex Products were, variously and without limitation,

16  "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green,"

17  "biodegradable," "pure," and/or "pure & natural," when, in fact, the Products were not.

18  Defendant further represented that "we proudly disclose everything that goes into our

19  mattresses right on our product pages"—a false statement that led reasonable consumers

20  to believe that they knew all of the ingredients in Defendant's Products. Defendant

21  additionally made false and/or deceptive representations and statements (by omission and

22  commission) that led reasonable consumers to believe that that the Products were good for

23  their health and not harmful to the environment.

24      103.    Further, as set forth above, Defendant made representations and statements

25  (by omission and commission) that led reasonable consumers to erroneously believe (i)

26  that the Products were worthy of the MADE SAFE certification; (ii) that the MADE

27  SAFE certification meant that the Products were "developed with 100 percent healthy

28

ingredients;" and (iii) that the MADE SAFE designation "prohibits all use of harmful substances."

104.    Plaintiffs and those similarly situated relied to their detriment on Avocado's false, misleading, and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Avocado, they would have acted differently by, without limitation, paying less for the Products.

105.    Defendant's acts and omissions are likely to deceive the general public.

106.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

107.    The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

108.    Plaintiffs seek, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Even for those who did not buy the Products directly from Defendant, a certain amount of money flowed from class members who purchased the Products through retailers to Defendant. Plaintiffs seek restitution of those amounts. If Plaintiffs and class members' claims at law fail, Plaintiffs, those similarly situated, and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered. Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.

109.    Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

110.    As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

111.    Plaintiffs did not discover Defendant's illicit acts until their expert, who was retained in late 2022, commissioned the testing of Defendant's latex in 2023. Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to manufacture its mattresses, Plaintiffs could not have discovered these facts even in the exercise of reasonable diligence. Uncovering Defendant's illicit behavior required sophisticated and expensive laboratory testing by a trained professional, as well as interpretation by an expert in rubber formulation.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

112.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

113.     In selling the Products to consumers, Defendant made false and misleading statements regarding them, as described more fully above. Defendant, however, deceptively failed to inform consumers, at the time of their purchase, that the latex Products were not "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "biodegradable," "pure," and/or "pure & natural." Defendant further represented that "we proudly disclose everything that goes into our mattresses right on our product pages"—a false statement. Defendant additionally made false and/or deceptive representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were good for their health and not harmful to the environment.

114.     Further, in selling the Products to consumers, Defendant also made the false and misleading statements to consumers (i) that the Products were worthy of the MADE SAFE certification; (ii) that the MADE SAFE certification meant that the Products were "developed with 100 percent healthy ingredients;" and (iii) that the MADE SAFE designation "prohibits all use of harmful substances."

115.     These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiffs and those similarly situated regarding whether to purchase the Products and how much to pay for the Products.

116.     Defendant made identical misrepresentations and omissions to all members of the Class regarding the Products.

117.     Defendant should have known its representations were false, and that it had no reasonable grounds for believing them to be true when it made them.

- 38 -
CLASS ACTION COMPLAINT

118.    By and through such negligent misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiffs and those similarly situated, without limitation, to purchase the Products at the price they paid.

119.    Plaintiffs and those similarly situated reasonably relied on Defendant's representations. Specifically, Plaintiffs and those similarly situated paid as much as they did for the Products.

120.    Because Plaintiffs reasonably relied on Avocado's false representations, Plaintiffs, and those similarly situated, were harmed in the amount of the price premium they paid (i.e., the difference between the price they paid for the Products and the price they would have paid but for Defendant's misrepresentations).

121.    Plaintiffs did not discover Defendant's illicit acts until their expert, who was retained in late 2022, commissioned the testing of Defendant's latex in 2023. Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to manufacture its mattresses, Plaintiffs could not have discovered these facts even in the exercise of reasonable diligence. Uncovering Defendant's illicit behavior required sophisticated and expensive laboratory testing by a trained professional, as well as interpretation by an expert in rubber formulation.

### PLAINTIFFS' FIFTH CAUSE OF ACTION
**(Unfair, Unlawful and Deceptive Trade Practices,
Business and Professions Code § 17200, *et seq.*)
On Behalf of Plaintiffs and the California Subclass**

122.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

123.    Defendant has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful

business practices outlined in this Class Action Complaint. In particular, Defendant has engaged in, and continues to engage in, unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.     engaging in misrepresentation and omissions as described herein;

b.     violating the California Consumer Legal Remedies Act as described herein;

c.     violating the FAL as described herein.

124.   Plaintiffs and those similarly situated relied to their detriment on Defendant's unfair, deceptive, and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, not paying for, or, at a minimum, paying less for the Products.

125.   Defendant's acts and omissions are likely to deceive the general public.

126.   Defendant engaged in these unlawful, deceptive, and unfair practices to increase its profits. Accordingly, Avocado has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

127.   In addition to the unlawful and deceptive acts described above, Defendant engaged in unfair practices by violating the Federal Trade Commission's guides against bait advertising. 16 C.F.R. §§ 238.1-4. The policy provides that "No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). Defendant's aforementioned acts violated this policy, including its representations as to the manufacturing process used for its latex

Products, which omits any mention of the introduction of potentially hazardous synthetic chemicals.

128.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

129.    As a direct and proximate result of such actions, Plaintiffs and the other class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and those similarly situated lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial. If Plaintiffs' and class members' claims at law fail, Plaintiffs, those similarly situated and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered.

130.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

131.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from offering the Products within a reasonable time after entry of judgment. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled.

Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

132.     Plaintiffs did not discover Defendant's illicit acts until their expert, who was retained in late 2022, commissioned the testing of Defendant's latex in 2023. Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to manufacture its mattresses, Plaintiffs could not have discovered these facts even in the exercise of reasonable diligence. Uncovering Defendant's illicit behavior required sophisticated and expensive laboratory testing by a trained professional, as well as interpretation by an expert in rubber formulation.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiffs and the Class**

133.     Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

134.     Plaintiffs and members of the Class conferred a benefit on the Defendant by purchasing the Products.

135.     Defendant has been unjustly enriched in retaining the revenues from Plaintiffs and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented, as set forth above, including without limitation, that the Products are (i) free of synthetic and nontoxic chemicals, and (ii) worthy of the MADE SAFE certification, the meaning of which Defendant also misrepresented. This harmed Plaintiffs and members of the Class because they paid a price premium as a result.

136.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this relief.

137.    Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and those similarly situated.

138.    Plaintiffs did not discover Defendant's illicit acts until their expert, who was retained in late 2022, commissioned the testing of Defendant's latex in 2023. Plaintiffs were not at fault for failing to discover Defendant's illicit acts prior to that time. Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry. Due to Defendant's fraudulent concealment of the ingredients it uses to manufacture its mattresses, Plaintiffs could not have discovered these facts even in the exercise of reasonable diligence. Uncovering Defendant's illicit behavior required sophisticated and expensive laboratory testing by a trained professional, as well as interpretation by an expert in rubber formulation.

## PLAINTIFFS' SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### On Behalf of Plaintiffs and the Class

139.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

140.    To sell its Products, Defendant advertised and represented to Plaintiffs and those similarly situated that the Products were "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green," "biodegradable," "pure," and/or "pure & natural."

141.    Defendant also advertised and represented to Plaintiffs and those similarly situated that Defendant's Products were worthy of the MADE SAFE certification, which

1   according to Defendant, meant that the Products were "developed with 100 percent

2   healthy ingredients." Defendant also advertised and represented to Plaintiffs and those

3   similarly situated that the MADE SAFE designation "prohibits all use of harmful

4   substances."

5       142.   Defendant offered to provide the Products, as described to Plaintiffs, in

6   exchange for money.

7       143.   Based on these representations, Plaintiffs accepted Defendant's offer, and

8   paid money for the Products, thereby forming a valid contract with Defendant.

9       144.   Defendant breached the valid contract because it failed to provide Products

10  that were "natural," "organic," "non-toxic," "certified organic," "healthy," "eco," "green,"

11  "biodegradable," "pure," and/or "pure & natural." Instead, it provided Products that

12  contained synthetic, unnatural, inorganic, toxic, unhealthy, nonbiodegradable chemicals.

13      145.   Defendant further breached the valid contract because the Products were

14  not worthy of the MADE SAFE certification. Rather, the Products contained one or more

15  hazardous chemicals that should have disqualified it from the MADE SAFE certification.

16      146.   Defendant further breached the valid contract because it misrepresented the

17  meaning of the MADE SAFE certification. Contrary to Defendant's representations, the

18  certification does not mean that the Products were "developed with 100 percent healthy

19  ingredients." Nor does the MADE SAFE designation "prohibit[] all use of harmful

20  substances," as Defendant represented.

21      147.   As a result of Defendant's breach, Plaintiffs and those similarly situated

22  were damaged in the amount that they paid for the Products.

23      148.   Plaintiffs' injuries and the acts of Defendant that caused those injuries have

24  been difficult for Plaintiffs and those similarly situated to detect, because detection

25  requires sophisticated and expensive laboratory testing by a trained professional, as well

26  as interpretation by an expert in rubber formulation. In contrast, Defendant has always

27  been aware of the precise ingredients that it uses in its Products. Defendant knew that

28

- 44 -

Plaintiffs and those similarly situated were ignorant of their injuries, as they had no reasonable means to discover that Defendant was misrepresenting the nature and certification of the Products. Accordingly, Defendant always been in a far superior position to comprehend its acts and the injuries of Plaintiffs and those similarly situated. Plaintiffs and those similarly situated should not suffer where, as here, circumstances prevented them from knowing they have been harmed. Likewise, Defendant should not be allowed to knowingly profit from consumers' ignorance, which Defendant intentionally caused with its ongoing campaign of concealment.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

A.      Certification of the proposed Classes, including appointment of Plaintiffs' counsel as class counsel;

B.      An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.      An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.      An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.      An award of treble damages, except for those causes of action where treble damages are not legally available;

G.      An award of restitution in an amount to be determined at trial;

H.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

1    I.    For reasonable attorneys' fees and the costs of suit incurred; and

2    J.    For such further relief as this Court may deem just and proper.

3                        **JURY TRIAL DEMANDED**

4    Plaintiffs hereby demand a trial by jury.

5    Dated: April 28, 2023

6                                    GUTRIDE SAFIER LLP

7                                    /s/Seth A. Safier/s/
                                     Seth A. Safier (State Bar No. 197427)
                                       seth@gutridesafier.com
8                                    Todd Kennedy (State Bar No. 250267)
                                       todd@gutridesafier.com
9                                    100 Pine Street, Suite 1250
                                     San Francisco, CA 94111
10                                   Telephone: (415) 639-9090
                                     Facsimile:  (415) 449-6469
11
                                     Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A



Testing. Development. Problem Solving.

March 30, 2023

# · TEST REPORT·

## *Project Number: 168561*
*P.O. Number: 033023-1*

## CHEMICAL ANALYSIS SERVICES
Foam Sample - No ID

Prepared For:

Tim Osswald
**Polymer Engineering Center**
**University of Wisconsin-Madison**
1513 University Avenue
Madison, WI 53706



Thomas M. Knowles, Vice President
*Advanced Research and Development*

Malcolm Wilborn, Vice President
*Business Development*

**ACCREDITED**
Cert-255-01, 255-02, 255-03, 255-04

An A2LA ISO 17025 Accredited Testing Laboratory-
Certificate Numbers 255-01, 255-02, 255-03 and 255-04
ISO 9001-2015 Registered

ISO 9001:2015
Registered

This report is for the exclusive use of the client(s) to which it is addressed and shall be reproduced, except in full, without written permission of Akron Rubber Development Laboratory, Inc. (ARDL). The information provided herein applies to the specific material, products, or processes tested or evaluated. Statements of Conformity included herein are based on the option as agreed in the client testing contract. No warranty of any kind is herein construed or implied. The liability of ARDL, Inc. shall be limited to the amount of consideration paid for services rendered. ARDL Inc. is ISO 17025 accredited by A2LA (American Association for Laboratory Accreditation) for the test methods listed on the referenced certifications.

## COMPOUND ANALYSIS

Date: *March 30, 2023*
Attention: *Tim Osswald*
Company: *Polymer Engineering Center*
*University of Wisconsin-Madison*

Sample I.D.: *Foam Sample - No ID*
Sample Color: *Beige*
Project Number: *168561*

---

**A. Polymer Identification; ASTM D 3677**
(Infrared Spectroscopy)     **Percent of RHC**
1. *Polyisoprene*     *100*
2.
3.

**B. Ash Content; ASTM D 297**
Ash, %     *7.4%*

**C. Semi-quantitative Ash Analysis**
(ICP - MS; ASTM D5673 or EDX; ARDL 3813)
a. > 10% ..........................   *Zn*
b. 5-25% ..........................
c. 1-10% ..........................   *Si, Ti*
d. 0.5-5% ..........................   *Mg*
e. 0.1-1% ..........................
f. 0.05-0.5% ....................
g. 0.01-0.1% ...................   *Al, Ca*
h. Below Detection ..........   *Bi, Mn, Sn, Te*
        *Fe, Ni, Cu, Se,*
        *Sb, Ba, Pb*

**D. Total RHC; ASTM D 297**     *80.7%*

**E. Total Sulfur; Leco Method^**     *3.09%*

**F. Density, Mg/m³; ASTM D 297**     *0.074*

**G. Wax Content; ARDL 3160**     *N/A*

---

**H. Extractables; ASTM D 297**
Acetone Extractables, %     *8.8%*
1. Color:     *Opaque/Cream*
2. Consistency:     *Semi-Solid*

**I. Carbon Black; ASTM D 297^ or ASTM D 3849**
Carbon Black
1. ASTM Series Black     *NA*

**J. Extract Analysis:**
1. Plasticizers and Extractables; D2702 or ARDL 3160
    a.   *Hydrocarbon Oil*
    b.   *Penyl Furan based Surfactant*
    c.
    d.

2. Antioxidants; ARDL 3160
    a.   *Wingstay L*
    b.
    c.

3. Accelerators (Suggested); ARDL 3110, 3138, 3160
    a.   *ZDEC*
    b.   *MBT or MBTS*
    c.   *DPG*

**K. Beilstein^, (Presence of Halogens)**     *Negative*

**L. Durometer; ASTM D 2240, Type 00**     *22*

---

*\*ARDL is ISO 17025 accredited by A2LA for the test methods listed on the certificates referenced on page one. Unless specified, the current specification version is used.*
*NOTE: The mark ^ is used to designate non-accredited test methods in the body of the report and that any opinions or interpretations for of results for these non-accredited tests are outside the scope of this organization's accreditation*

## *RECONSTRUCTED FORMULATION*

| | | |
|---|---|---|
| Date: | March 30, 2023 | |
| Attention: | Tim Osswald | |
| Company: | Polymer Engineering Center | |
| | University of Wisconsin-Madison | |

| | |
|---|---|
| Sample I.D.: | Foam Sample - No ID |
| Sample Color: | Beige |
| Project No.: | 168561 |

| Ingredient | PHR | Extractables | Ash | Volume |
|---|---|---|---|---|
| Polyisoprene | 100.0 | 1.0 | 3.2 | 108.7 |
| Titanium Dioxide | 1.0 | | 1.0 | 0.3 |
| Zinc Oxide | 4.5 | | 4.5 | 0.8 |
| Hydrocarbon Oil | 5.0 | 5.0 | | 5.6 |
| Pentyl Furan based Surfactant | 2.0 | 1.5 | | 1.7 |
| Stearic Acid | 1.5 | 1.5 | | 1.7 |
| Wingstay L | 0.5 | 0.5 | | 0.5 |
| Misc. Extractables* | 0.5 | 0.5 | | 0.6 |
| ZDEC | 1.0 | 0.3 | | 0.8 |
| MBT or MBTS | 0.2 | | | 0.1 |
| DPG | 0.2 | | | 0.2 |
| Sulfur | 1.0 | | | 0.5 |
| TOTAL | 117.4 | 10.3 | 8.7 | 121.4 |

| | | | |
|---|---|---|---|
| Calculated Ash Content............. | _7.4%_ | | |
| Calculated Extractables............. | _8.8%_ | | |
| Calculated Carbon Black........... | _0.0%_ | | |
| Calculated Density (Mg/m3)........ | _0.967_ | (Foam Rubber whipped) | |

Comments* It may contain rosin acids, accelerator fragments and other reactions products, etc.

If an attempt is made to mix this formulation based on the analytical data, and it does not match the performance of the analyzed part, please call  Thomas Knowles or Malcolm Wilborn and we may be able to help select the ingredients that are not identified by trade name.

Thomas M. Knowles, Vice President
*Advanced Research and Development*
AKRON RUBBER DEVELOPMENT LABORATORY, INC

Malcolm Wilborn, Vice President
*Business Development*





PerkinElmer Spectrum Version 10.4.1
Tuesday, March 07, 2023 8:27 AM

Administrator
Tuesday, March 07, 2023 8:27 AM

Analyst
Date

P561NE   POLYMER ENGINEERING CENTER
SAMPLE: NO ID
EXTRACT
PN 168561       PJK       3/07/23
ARDL                          PK307238G

cm-1

P561NE    Frontier  C97746 Tuesday, March 07 2023

File       :Z:\A168561A.D
Operator   : SM
Acquired   : 09 Mar 2023  09:57      using AcqMethod ARDL1AUTO.M
Instrument :   GCMS88905977
Sample Name: Foam Piece
Misc Info  : Polymer Engineering Center, UW Madison
Vial Number: 3



Abundance                                          TIC: A168561A.D\data.ms

1 benzene, isocyanato-
2 aniline
3 benzyl chloride
4 Best Match: 1-dodecanamine, N,N-dimethyl-
5 methyl tetradecanoate
6 isopropyl myristate
7 palmitic acid, methyl ester
8 DBP
9 9,12-octadecadienoic acid (Z,Z)-, methyl ester
10 9-octadecenoic acid, methyl ester, (E)-
11 methyl stearate
12 Best Match: Pentyl Furan Fatty Acid
13 eicosanoic acid, methyl ester
14 Best Match: alkene fragment
15 squalene
16 ZDEC
17 Best Match: Citroflex A-4
18 Best Match: Wingstay L
19 Stigmasta-3,5-diene

# Exhibit B

# EXHIBIT B

I, Richard Roberts, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I used the Avocado website to purchase (i) an Avocado Green Mattress, king size with pillow top on or about May 25, 2019; (ii) an Avocado Green Pillow, standard  size, on or about May 25, 2019; and (iii) an Avocado Molded Latex Pillow, on or about August 30, 2021. I made these purchases using Avocado's website while in Palo Alto, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 20th day of April 2023, in Palo Alto, California.



Richard Roberts

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

From: **Avocado Green Mattress** <orders@avocadomattress.com>
Date: Sat, May 25, 2019 at 3:36 PM
Subject: Your Avocado Order Receipt from 5.25.19
To: < >

# WAY TO GO GREEN, RICHARD!

We received your order — THANK YOU! Below are your estimated order
production and shipping times. As your handmade products are completed and
ready to ship, we'll email updates with tracking information.

### ORDER: 102700

| Product | Quantity | Price |
|---|---|---|
| **AVOCADO GREEN PILLOW**<br>Size: Standard<br>Delivery: FedEx® - Signature Required<br><br>  Fulfillment: 5 - 7 days<br><br>  Shipping from Los Angeles: 1-4 days | 2 | $79.00 |
| **AVOCADO GREEN MATTRESS**<br>Size: King<br>Add Pillow-Top: Yes<br>Delivery: In-Home Delivery & Setup<br><br>  Fulfillment: 5 - 7 days<br><br>  Shipping from Los Angeles: 3-6 days | 1 | $2,199.00 |

| | |
|---|---|
| **Subtotal** | **$2,357.00** |
| **Coupon: thanks225** | **-$225.00** |
| **Shipping** | **$199.00** |
| **Tax** | **$169.00** |
| **Order Total** | **$2,500.00** |
| **Payment Method** | **Credit Card** |

**Billing Address**                    **Shipping Address**

Richard Roberts                        Richard Roberts

Palo Alto, CA 94303                    Palo Alto, CA 94303
Phone:                                 Phone:

From: **Avocado Green Mattress** <support@avocadomattress.com>

Date: Mon, Aug 30, 2021 at 6:59 PM

Subject: A shipment from Avocado Green Mattress is on the way

To: < >



ORDER #A458537

## Good news, Richard!

Your order is on the way. Tracking numbers and links are below. If you opted for in-home delivery, our shipping partners will contact you directly to schedule delivery. It may take several days for your tracking ID to show movement, due to overloaded shipping infrastructures.

Tracking numbers:
283139849784

View your order

Items in this shipment



**Avocado Molded Latex Pillow × 1**
Standard
 PILLOWTALK (–$19.80)